**Marc P. Berger**
**Sanjay Wadhwa**
**George N. Stepaniuk**
**Todd Brody**
**Chevon Walker**
**Attorneys for Plaintiff**
**U.S. SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-0080 (Brody)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **Civil No.** |
| **-against-** | **ECF CASE** |
| **SANDY J. MASSELLI, JR.,** **CARLYLE GAMING & ENTERTAINMENT LTD.,** **CARLYLE ENTERTAINMENT LTD.,** **INTERCAPITAL PARTNERS LTD.** **(a/k/a INTERCAPITAL PARTNERS LTD.** **LIABILITY COMPANY and** **INTERCAPITAL PARTNERS, LLC),** **INTERCAPITAL MANAGEMENT LTD., and** **APPNOSTIQ INTERACTIVE LTD.,** | **COMPLAINT AND JURY** **DEMAND** |
| **Defendants.** | |

Plaintiff Securities and Exchange Commission ("Commission") alleges the following

against defendants Sandy J. Masselli, Jr. ("Masselli"), Carlyle Gaming & Entertainment Ltd.

("Carlyle Gaming"), Carlyle Entertainment Ltd. ("Carlyle Entertainment" and collectively with

Carlyle Gaming, the "Carlyle Entities"), Intercapital Partners Ltd. (a/k/a Intercapital Partners

Ltd. Liability Company and Intercapital Partners LLC) ("Intercapital Partners"), Intercapital

Management Ltd. ("Intercapital Management") and Appnostiq Interactive Ltd. ("Appnostiq") (collectively, "Defendants"):

## SUMMARY OF ALLEGATIONS

1. This case involves a securities offering fraud perpetrated by Masselli, who misappropriated at least hundreds of thousands, and potentially millions, of dollars from retail investors for his own personal use. Masselli, who was chairman and CEO of Carlyle Gaming and Carlyle Entertainment, raised as much as approximately $3 million from investors from 2012 through 2017. As part of the scheme, Masselli sold investors worthless stock in the Carlyle Entities by falsely claiming that the companies were on the verge of conducting a lucrative initial public offering ("IPO") and soon to be listed on major stock exchanges in the United States.

2. For example, in January 2014, Masselli told an investor who was a self-employed small business owner ("Investor A") that Carlyle Gaming was going to conduct an IPO and be listed on the NASDAQ later that month, and that Investor A would reap extravagant returns in the secondary trading market if Investor A bought Carlyle Gaming stock before the IPO. These statements were false because, as Masselli knew, Carlyle Gaming had no actual plan or capability to conduct an IPO and had not even filed an application to be listed on the NASDAQ.

3. Masselli also promised Investor A that Carlyle Gaming would return Investor A's $100,000 investment on request. But when the IPO and the NASDAQ listing did not materialize and Investor A asked Masselli for the money back, Masselli failed to return Investor A's money. In fact, Masselli had already spent Investor A's money to pay personal expenses and for other purposes unrelated to Carlyle Gaming's purported online gaming business.

4. In the spring of 2017, Masselli defrauded an investor who was based in New Jersey ("Investor B") out of at least $100,000 in the same manner. Masselli told Investor B that

Carlyle Entertainment would be conducting an IPO in June 2017 and would be listed on the New York Stock Exchange ("NYSE").  Masselli knew these statements were false, as Carlyle Entertainment, like Carlyle Gaming, also lacked any plan or ability to conduct an IPO and had not filed to be listed on the NYSE.  Masselli never provided Investor B with stock certificates and used Investor B's money to pay personal expenses.

5.     In addition to the Carlyle Entities, Masselli also controlled and used Intercapital Partners, Intercapital Management and Appnostiq to misappropriate investor funds obtained through his scheme.

## **VIOLATIONS**

6.     By virtue of the conduct alleged herein, the Defendants, directly or indirectly, singly or in concert, violated the federal securities laws, as follows:

(a)     Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners violated Section 17(a) of the Securities Act of 1933 ("Securities Act) [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and

(b)     Appnostiq and Intercapital Management violated Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §77q(a)(1) and (3)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

7.     Unless the Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions and courses of business set forth in this complaint and in acts, practices, transactions and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.      The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].  The Commission seeks to restrain and permanently enjoin the Defendants from engaging in the acts, practices, transactions, and courses of business alleged herein.  In addition, the Commission seeks a final judgment (i) ordering the Defendants to disgorge their ill-gotten gains, together with prejudgment interest thereon, including an order holding each of the Defendants jointly and severally liable for disgorgement; (ii) ordering the Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (iii) prohibiting Masselli from participating in an offering of a penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and (iv) prohibiting Masselli, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d), 22(a) and 22(c) of the Securities Act [15 U.S.C. 77t(b), 77t(d), 77v(a), and 77v(c)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), and 78aa].

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. §

78aa].  Many of the acts, practices, events, transactions, communications, courses of business and other matters alleged herein occurred in the District of New Jersey, including misrepresentations made to investors and the misappropriation of investor funds.  Moreover, Masselli resides and conducts business in the District of New Jersey and/or resided and conducted business there during the relevant period.

11.     In connection with the conduct alleged in this complaint, the Defendants, directly or indirectly, singly or in concert, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails.

## THE DEFENDANTS

12.     **Masselli**, age 55, is a resident of Old Bridge, New Jersey.  In addition to being chairman and CEO of the Carlyle Entities, he owns Appnostiq and controls multiple entities with the name Intercapital Partners, identified below.  Masselli was a registered representative at several registered broker dealers for approximately 10 years, until January 1995, and formerly held series 7 and 63 licenses.  On October 26, 2017, Masselli was arrested and charged in a criminal complaint filed by the United States Attorney's Office for the District of New Jersey with bank and wire fraud relating to a credit card scheme.  *United States v. Sandy J. Masselli, Jr.*, 2:17-mj-7161 (D.N.J.).

13.     **Carlyle Gaming** is a Delaware corporation that purports to have a principal place of business in Toronto, Ontario.  Prior to 2015, Carlyle Gaming's purported principal place of business was in New York, New York.  Carlyle Gaming purports to own and operate interactive software-based games of chance offered over the internet.  Carlyle Gaming was quoted on the Pink Sheets until March 2009, when its registration pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)] was revoked, by order of the Commission, for failure to file periodic

reports.  In 2011, Carlyle Gaming filed another Form 10 registration statement with the Commission to again register its common shares pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)].  In January 2015, Carlyle Gaming terminated its registration with the Commission and announced a merger with Carlyle Entertainment.

14.     **Carlyle Entertainment** is a British Columbia corporation that purports to have a principal place of business in Charleston, South Carolina.  Carlyle Entertainment also purports to own and maintain interactive software-based games of chance offered over the internet.  Carlyle Entertainment was intermittently listed on the Canadian Securities Exchange ("CSE") from April 2016 through May 8, 2017, when its listing was suspended due to a cease trade order issued by the British Columbia Securities Commission for failure to file periodic disclosures and audited financial statements.

15.     **Intercapital Partners** is a Delaware corporation.  Masselli is Chairman and CEO of Intercapital Partners.  Masselli also uses the names Intercapital Partners Ltd. Liability Company and Intercapital Partners, LLC to refer to Intercapital Partners and all three entities utilize the same taxpayer identification number.  Bank records from the relevant period identify Masselli as the sole signatory on Intercapital Partners' account and list a New York City address.

16.     **Intercapital Management** is a New Jersey corporation.  Masselli is Chairman and CEO of Intercapital Management.  Bank records and other documents also identify Masselli as authorized signatory on its accounts and president of the company, and list the address of Masselli's former home in Red Bank, New Jersey as Intercapital Management's business address.

17.     **Appnostiq** is a New Jersey corporation formed in 2016 and owned by Masselli. Its purported principal place of business is Charleston, South Carolina, and Masselli is the sole signatory on its bank accounts.

## THE DEFENDANTS' FRAUDULENT SCHEME

18.     Between 2012 and 2017, Masselli engaged in a brazen scheme in which he stole investors' money to pay his own personal expenses.  Since 2012, Masselli raised a total of approximately $3 million from investors.  As part of the scheme, Masselli defrauded investors by making misrepresentations to induce investors to purchase stock in the Carlyle Entities.

19.     For example, as detailed below, Masselli induced Investor A and Investor B to transfer a total of over $200,000 to bank accounts Masselli controlled for purported stock investments in the Carlyle Entities.  Masselli told each investor that the Carlyle entity in which they were buying stock would invest the funds in the issuer's business operations, would imminently be conducting a lucrative IPO, and would thereafter be listed on a U.S. stock exchange.  Those statements were all false.

**Misrepresentations to Investor A**

20.     In 2009, Masselli first met Investor A, a self-employed small business owner residing in Canada.  In the fall of 2013, they reconnected and Masselli told Investor A that Carlyle Gaming was a public company that had millions in monthly sales and would soon be listed on the NASDAQ stock exchange.  Throughout the fall of 2013 and into 2014, Masselli and Investor A spoke several times over the phone, with Masselli often calling from phone numbers with U.S. area codes.  Masselli told Investor A that he was from New Jersey and also at times operated out of New York and South Carolina.

21.     During these calls, Masselli repeatedly told Investor A that Carlyle Gaming would be conducting an IPO in January 2014 and that the value of the stock would increase dramatically after the IPO.  Masselli also told Investor A that the stock would then be listed on the NASDAQ in January 2014.  Masselli pressured Investor A to invest quickly before the purported IPO, telling Investor A that Carlyle Gaming was "going live" in January 2014.

22.     In December 2013, Investor A signed a subscription agreement to purchase Carlyle Gaming stock.  On December 3, 2013, Investor A wired Can$50,000 ($45,625 USD) [1] for the stock purchase to an Intercapital Partners account in New York specified by Masselli. Masselli sold Investor A the stock at $0.25 per share, which Masselli described as a "friends and family price."

23.     Shortly thereafter, Masselli told Investor A that he would give Investor A an opportunity to purchase an additional 800,000 shares at the same price, but that Investor A would not have to pay the entire $200,000 at that time.  Masselli told Investor A that he would accept $50,000 up front and let Investor A pay the remaining $150,000 when Investor A sold the shares for a profit after the IPO.  Masselli told Investor A that the stock price would quickly increase following the IPO, thereby providing Investor A with sufficient funds to pay the remaining balance and still earn an immediate profit on Investor A's investment.

24.     Investor A agreed to make the additional stock purchase.  On January 6, 2014, Investor A received by email a stock subscription agreement bearing a signature purporting to be that of an individual identified in the agreement as the chief financial officer of Carlyle Gaming. That subscription agreement, also dated January 6, 2014, indicated a New York City address at

---

[1] Investor A made multiple payments to Masselli in Canadian currency totaling Can$100,000, which was the equivalent of approximately $90,100 USD.  At a later time, Investor A made an additional payment of approximately $9,900 USD to Masselli.

245 Park Avenue for Carlyle Gaming and stated that Carlyle Gaming's "offering and sale of the Securities are being made pursuant to (a) an effective Registration Statement (File No. 0-20940) (as amended . . . ) filed by the Company with the Securities and Exchange Commission . . . dated January 20, 2012."

25.     On January 8, 2014, Masselli emailed wire instructions to Investor A, using an Intercapital email address.  The signature block of the email stated:  "Sandy J. Masselli, Jr./Chairman & Chief Executive Officer/Intercapital Management Ltd./245 Park Avenue/New York, NY 10167/+1 212-682-7888."  The email directed Investor A to wire the $50,000 investment to an Intercapital Partners account at a U.S. Bank.  On January 9, 2014, Investor A wired Can$50,000 ($44,516.62 USD) to that U.S. Intercapital Partners bank account.  Masselli orally told Investor A that Intercapital Partners and Intercapital Management were subsidiaries of Carlyle Gaming.  Masselli thereafter induced Investor A to wire additional money to the same Intercapital Partners bank account, which Masselli told Investor A was needed to cover the exchange rate.  On February 6, 2014, Investor A sent a wire transmission in the amount of $9,848.38 USD.

26.     Masselli knew that his representations to Investor A were false, misleading and lacked a factual basis.  Carlyle Gaming never took any meaningful steps toward conducting an IPO in the U.S. and lacked the financial resources to do so.  For example, Carlyle Gaming had not entered into an underwriting agreement for an IPO or satisfied other prerequisites to conducting an IPO in the U.S.  Nor had Carlyle Gaming filed an application to be listed on the NASDAQ or engaged in any communications with anyone in NASDAQ's regulatory group. And at no time did Carlyle Gaming file a registration statement on Form S-1 under the Securities Act for an initial public offering of securities in the U.S.; nor did Carlyle Gaming ever have such a

registration statement declared effective, as the January 2014 subscription agreement had misrepresented.

27.     Masselli also told Investor A that Investor A's money would be held in a separate account until the IPO and that it would be returned to Investor A if Investor A so requested. Those statements were both false.  First, Masselli began spending Investor A's money on personal expenses almost as soon as it arrived.  Second, after the IPO failed to materialize, Investor A asked Masselli for the money back.  Masselli told Investor A that Masselli's "assistant" would handle the return of Investor A's money.  However, despite exchanging several emails with the supposed assistant, none of Investor A's money was ever returned.

28.     Immediately prior to Investor A's first payment reaching the Intercapital Partners account on December 5, 2013, the account balance was $1,233.  On the same day that Investor A's initial Can$50,000 ($45,625 USD) payment arrived, Masselli withdrew $1,500 in cash from the account.  By the end of that month, Masselli had wired $8,100 to pay rent for his prior residence in New Jersey, and had otherwise dissipated all but approximately $5,000 through cash withdrawals (including at ATMs in towns in which Masselli lived or in nearby towns and in-person withdrawals) and payment of his utility bills, credit card bills and other personal expenses, including groceries, clothing, cosmetics, restaurants, high-end hair products, Stub Hub tickets, a health spa and an automobile.

29.     Similarly, Masselli misappropriated Investor A's second payment of Can$50,000 ($44,516.62 USD), made on January 9, 2014.  Specifically, Masselli wired more than $23,000 to make a further rent payment on the house, and spent the remainder of the money making personal credit card payments, cash withdrawals, and a transfer to his personal account.  Masselli

also misappropriated for personal use Investor A's additional $9,848.38 USD payment into the Intercapital Partners account on February 6, 2014.

30.     None of the three payments made by Investor A went to the issuer whose stock Investor A was supposedly purchasing.

**Misrepresentations to Investor B**

31.     Masselli defrauded Investor B in similar fashion.  During the spring of 2017, Masselli repeatedly lied to Investor B about, among other things, a purportedly imminent IPO and NYSE listing for Carlyle Entertainment to induce Investor B to invest $100,000 in Carlyle Entertainment stock.

32.     Investor B, a self-employed New Jersey car leasing broker, met Masselli in the summer of 2016 when Masselli was shopping for new luxury cars.  At that time, Masselli told Investor B that Masselli had millions of dollars in assets through an investment company he owned named Intercapital and a London bank account with $100 million.  In the ensuing months, Investor B facilitated Masselli's leasing of multiple luxury cars, including a Ferrari and, as described below, a Mercedes, for which Masselli paid with Investor B's funds.

33.     During their conversations, Masselli told Investor B about Carlyle Entertainment, which Masselli described as his online gaming company.  Specifically, in spring of 2017, Masselli told Investor B that Carlyle Entertainment was going to conduct an IPO in June 2017 at a price of over $1.00 per share, and that Investor B would be able to sell the stock on the post-IPO secondary market for more than four times the purchase price.  Masselli offered Investor B the "opportunity" to purchase 400,000 shares of the stock before the IPO at a price of $0.25 per share.

34.     Through conversations and documents, Masselli further represented to Investor B that Carlyle Entertainment (i) was conducting a registered public offering pursuant to an effective Form S-1 registration statement filed with the Commission; (ii) was currently listed on the CSE; (iii) would soon be listed on the NYSE, OTC markets and the London Stock Exchange; and (iv) had over $2 million in cash and working capital.  In a May 23, 2017 stock purchase agreement that Masselli provided to Investor B, Masselli represented that the "offering and sale of the Securities are being made pursuant to (a) an effective Registration Statement (File No. 0-20940) (as amended . . . ) filed by the Company with the Securities and Exchange Commission." On May 23, 2017, along with the stock subscription agreement, Masselli sent Investor B a signed letter nominating Investor B to Carlyle Entertainment's board of directors.  Masselli sent the letter by email using Masselli's Intercapital email address and signed off as chairman and CEO of Intercapital Partners.  Among various claims in the letter regarding Investor B's purported compensation and benefits as a director, Masselli stated that as a director, Investor B can "purchase or designate a referral to investors to purchase" shares of Carlyle Entertainment "pursuant to our US Securities and Exchange Commission S1 offering, at a price of .31 cents per share."

35.     As Masselli knew, each of the foregoing representations to Investor B was false, misleading and lacked a factual basis.  Neither Carlyle Entity took any meaningful steps toward conducting an IPO since Masselli's similar misrepresentations to Investor A three years earlier; nor had either Carlyle entity secured the financial resources to do so.  In 2017, Carlyle Entertainment lacked the requisite audited financial statements or an underwriting agreement, and had not satisfied other prerequisites to launching an IPO in the U.S.  In addition, at no time did Carlyle Entertainment file a registration statement on Form S-1 under the Securities Act for

an initial public offering of securities in the U.S.; nor did Carlyle Entertainment ever have such a registration statement declared effective, as the May 2017 subscription agreement had misrepresented.

36.     In the May 23, 2017 board nomination letter that Masselli sent to Investor B, Masselli further misrepresented as follows:  "The Company is listed . . . in Canada on the TSX CNSX CSE and [is] to be listed in the United States OTC Bulletin Board, OTCQX and NYSE Alternext.  The Company will also apply to the London Stock Exchange."  Masselli also made similar misrepresentations orally to Investor B prior to Investor B's investment, including that Carlyle Entertainment would soon be listed on the NYSE.

37.     Neither Carlyle Gaming nor Carlyle Entertainment has ever been listed on the Toronto Stock Exchange, also known as the TSX, the London Stock Exchange, or the NYSE, which owns NYSE Alternext (now known as NYSE American).  Nor did the Carlyle Entities file an application for listing with the NYSE Regulations group, which assesses listing applications for the NYSE.  Additionally, the Carlyle Entities were ineligible to be quoted on OTC Bulletin Board, because they lacked current filings with the Commission.

38.     On May 23, 2017, Masselli emailed to Investor B Carlyle Entertainment's prospectus filed with the British Columbia's Securities Commission in connection with its prior application for CSE listing, dated February 15, 2016 and signed by Masselli.  In that prospectus, Masselli falsely stated that as of January 31, 2016, Carlyle Entertainment "had a cash balance of $2,478,576 and working capital of $2,036,928."  Bank records for the Carlyle Entities, including Canadian bank records, show that none of the relevant entities has ever had a cash balance or working capital anywhere near $2 million in their accounts at any time during the relevant period.

39.     On May 24, 2017, at Masselli's direction, Investor B wired $100,000 to an Appnostiq bank account controlled by Masselli for the purchase of 400,000 shares of Carlyle Entertainment stock.  Masselli told Investor B that Appnostiq was a trust company that held shareholder funds pending Carlyle Entertainment's upcoming IPO.  The IPO never occurred, and Investor B never received any stock certificates for his money.

40.     Like Investor A, once the IPO failed to materialize, Investor B asked Masselli to return Investor B's $100,000 investment.  Masselli provided Investor B false excuses aimed at preventing Investor B from learning that Masselli had used the money for personal expenses.  For example, Masselli falsely told Investor B that the IPO was delayed due to issues with auditors.

41.     While Masselli had indicated to Investor B that Investor B's money would be used by Carlyle Entertainment for its business expenses, Masselli began spending the money on personal expenses soon after the money arrived in Masselli's Appnostiq account.  Immediately prior to Investor B's $100,000 stock purchase payment on May 24, 2017, the Appnostiq account had a negative balance due to a recently bounced check.  Within a week of Investor B's $100,000 payment, Masselli dissipated more than half of those funds through a payment for approximately $28,000 to lease a Mercedes for his son, to pay credit card payments and for a cash withdrawal in the town in which Masselli lived.  Over the next three months, Masselli spent the remainder of Investor B's $100,000 investment on various personal expenses, including restaurant meals, phone service, groceries, storage facility payments, hair salon products, college tuition, luxury handbags, movie streaming services, as well as cash withdrawals.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act
### (Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners)

42.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 41.

43.     Defendants Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners, directly or indirectly, singly or in concert, in the offer or sale of securities and by use of the means of instruments of transportation or communication in interstate commerce, knowingly or recklessly have:  (a) employed devices, schemes, or artifices to defraud, (b) obtained money or property by means of untrue statements of a material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

44.     By reason of the foregoing, Defendants Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners, directly or indirectly, singly or in concert, have violated, and unless enjoined will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Sections 17(a)(1) and (3) of the Securities Act
### (Appnostiq and Intercapital Management)

45.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 41.

46.     Defendants Appnostiq and Intercapital Management, directly or indirectly, singly or in concert, in the offer or sale of securities and by use of the means of instruments of transportation or communication in interstate commerce, knowingly, recklessly, or negligently

have:  (a) employed devices, schemes, or artifices to defraud and/or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

47.     By reason of the foregoing, Defendants Appnostiq and Intercapital Management, directly or indirectly, singly or in concert, have violated, and unless enjoined will again violate, Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

**THIRD CLAIM FOR RELIEF**

**Violations of Section 10(b) and Rule 10b-5**
**(Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners)**

48.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 41.

49.     Defendants Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of the national securities exchange, knowingly or recklessly have:  (a) employed devices, schemes, or artifices to defraud, (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

50.     By reason of the foregoing, Defendants Masselli, Carlyle Gaming, Carlyle Entertainment and Intercapital Partners, directly or indirectly, singly or in concert, have violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF

**Violations of Section 10(b) and Rules 10b-5(a) and (c)
(Appnostiq and Intercapital Management)**

51.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 41.

52.     Defendants Appnostiq and Intercapital Management, directly or indirectly, singly

or in concert, in connection with the purchase or sale of securities and by use of the means or

instrumentalities of interstate commerce or of the mails, or of the facilities of the national

securities exchange, knowingly or recklessly have:  (a) employed devices, schemes, or artifices

to defraud and/or (c) engaged in acts, practices, or courses of business which operated or would

operate as a fraud or deceit upon other persons.

53.     By reason of the foregoing, Defendants Appnostiq and Intercapital Management,

directly or indirectly, singly or in concert, have violated, and unless enjoined will again violate,

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder

[17 C.F.R. § 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests a Final Judgment:

### I.

Permanently enjoining Defendants from committing violations of the federal securities

laws alleged in this complaint;

### II.

Ordering the Defendants, jointly and severally, to disgorge the ill-gotten gains they

received as a result of the violations alleged in this complaint, and ordering each of them to each

pay prejudgment interest thereon;

**III.**

Ordering the Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

**IV.**

Prohibiting Masselli from participating in an offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)];

**V.**

Prohibiting Masselli, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

**VI.**

Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands that this case be tried to a jury.

Dated:  New York, New York                    Respectfully submitted,
         August 28, 2018


                                             _/s/ Todd Brody_
                                             Marc P. Berger*
                                             Sanjay Wadhwa*
                                             George N. Stepaniuk*
                                             Todd Brody
                                             Chevon Walker
                                             Counsel for Plaintiff
                                             U.S. Securities and Exchange Commission
                                             New York Regional Office
                                             200 Vesey Street, Suite 400
                                             New York, New York 10281-1022
                                             (212) 336-0080 (Brody)
                                             *Not admitted in New Jersey

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged in the

foregoing Complaint is not the subject of any other action pending in any court, or of any

pending arbitration or administrative proceeding.

*/s/ Todd Brody*

Todd Brody
Counsel for Plaintiff
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0080

## DESIGNATION OF AGENT FOR SERVICE

Pursuant to Local Civil Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the above-captioned action.  Therefore, service upon the United States or its authorized designee, J. Andrew Ruymann, Chief, Civil Division, United States Attorney's Office for the District of New Jersey, 402 East State Street, Room 430, Trenton, NJ 08608, shall constitute service upon the Commission for purposes of this action.

*/s/ Todd Brody*
Todd Brody
Counsel for Plaintiff
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0080